Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 767 | **DATE** | 5/9/2002 |
| **CASE TITLE** | In re: Bank One Securities vs. Litigation/First Chicago Shareholder | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The Naomi Borwell Trust is hereby appointed as the representative of the class. We grant [67-1] plaintiff's motion for class certification with the modification that the class shall exclude all shareholders who sold their stock prior to 8/30/1999. Status hearing set for 5/23/2002 @ 10:00 a.m. See order for further details.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 14 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 141 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: BANK ONE SECURITIES      Case No. 00 CV 0767
LITIGATION/FIRST CHICAGO     Wayne R. Andersen
SHAREHOLDER CLAIMS     District Judge



## MEMORANDUM, OPINION AND ORDER

Plaintiff, the Naomi Borwell Trust ("Borwell Trust"), brings this putative class action on behalf of itself and those similarly situated against Defendants, Bank One Corporation ("Bank One"), John B. McCoy, Richard J. Lehman, David J. Vitale, Verne G. Istock, Michael J. McMennamin and William P. Boardman (collectively, the "Defendants"). Plaintiff now moves for class certification pursuant to Fed.R.Civ.P. 23. Defendants oppose Plaintiff's motion on the basis that the proposed class representative does not satisfy the requirements of Fed. R. Civ. P. 23(a) and the proposed class definition is too broad. For the following reasons, we grant Plaintiffs' motion for class certification, although we will exclude from the class those persons who sold their stock prior to August 30, 1999.

## BACKGROUND

This action concerns the merger of Bank One's predecessors: Banc One Corporation ("Old Banc One") and First Chicago NBD ("First Chicago"). Plaintiff claims that certain documents filed by the companies in connection with the exchange of First Chicago stock for Bank One stock contained materially false and misleading statements regarding the earnings of Old Banc One's credit card subsidiary, First U.S.A., N.A. ("First USA"). Plaintiff now seeks a determination by the Court that this action may be maintained pursuant to Fed. R. Civ. P. 23 as a class action comprised of those persons who owned shares of First Chicago common stock and

141

acquired shares of Bank One in exchange for their shares of First Chicago pursuant to the merger. Plaintiffs also seek an order appointing the Borwell Trust as representative of that class.

On December 21, 2000, the Court entered its Order designating the Borwell Trust and the Evergreen Fund as Lead Plaintiffs and Arthur T. Susman as Lead Counsel. Evergreen Fund has made an oral motion to withdraw as Lead Plaintiff, which the Court has granted.

In its motion to certify a plaintiff class, Plaintiff, the Borwell Trust, defines the proposed class as follows:

> All persons and entities who acquired their shares of Bank One Corporation common stock in exchange for their First Chicago NBD ("First Chicago) common stock pursuant to the Registration Statement and Merger Proxy/Prospectus in connection with the Merger between Bank One Corporation and First Chicago on October 2, 1998. Excluded from the Class are: (a) Defendants; (b) any entity in which a Defendant has a controlling interest or is a part or subsidiary of, or is controlled by Bank One Corp.; and (c) the officers, directors, affiliates, legal representatives, heirs, predecessors, successors and assigns of any of the Defendants.

I. The Allegations Of The Complaint

The Consolidated Complaint in this case alleges that in connection with their merger on July 31, 1998, Old Banc One and First Chicago filed a joint Registration Statement pursuant to section 6 of the Securities Act, 15 U.S.C. § 77f. On August 5, 1998, both companies mailed to their respective shareholders a Joint Proxy Statement and Prospectus (the "Proxy"). The Proxy sets forth the reasons why the companies' respective boards of directors recommended that their shareholders vote in favor of the merger. It also included summaries of fairness opinions rendered by four different investment banks, as well as pro forma consolidated financial statements for the combined companies.

On September 15, 1998, the merger was approved by the Old Banc One and First

2

Chicago shareholders. Ninety-eight percent of Old Banc One shareholders voted to approve the merger, as did ninety-three percent of the First Chicago shareholders. The Borwell Trust voted by proxy in support of the merger, and the merger became effective on October 2, 1998.

The merger was completed in two steps. In the first step, all shares of Old Banc One stock were automatically converted on a one-to-one basis into shares of Bank One. In the second step, First Chicago merged with, and into, Bank One. Shares of First Chicago stock were then converted into 1.62 shares of Bank One stock.

Nearly one year later, on August 24, 1999, after the close of the financial markets, Bank One issued a press release announcing revisions to its prospective earnings estimates for the full year 1999. On November 10, 1999, Bank One announced a further reduction in its earning expectations for the full year 1999. In the wake of these announcements, the price of Bank One's common stock declined.

A series of lawsuits was then filed against Defendants, all claiming injury due to allegedly false and misleading information in Bank One's financial statements. In this action, Plaintiff alleges that the Registration Statement and Proxy filed in connection with the 1998 merger was false and misleading because it incorporated by reference certain historical financial statements of Old Banc One for 1997 and the first two quarters of 1998. Specifically, Plaintiff alleges that Old Banc One's credit card subsidiary, First USA, improperly collected late fees and finance charges from credit card customers in violation of the Federal Truth In Lending Act ("TILA"), and that this improper revenue was included in Old Banc One's financial statements. Plaintiff also claims that the financial statements were misleading because they purportedly did not comply with Generally Accepted Accounting Principles ("GAAP"). The cumulative effect of the

3

alleged transgressions, according to the Consolidated Complaint, was that First Chicago shareholders approved the merger and acquired Bank One shares at an artificially inflated price and at an artificially deflated exchange ratio.

## DISCUSSION

I. Class Certification Is Particularly Appropriate In Securities Cases

The Seventh Circuit Court of Appeals has liberally construed Rule 23 in shareholder suits. *See King v. Kansas City Southern Industries, Inc.*, 519 F.2d 20, 25-26 (7th Cir. 1975). Courts in this district recognize that:

> securities fraud cases are uniquely situated to class action treatment since the claims of individual investors are often too small to merit separate lawsuits. The class action is thus a useful device in which to litigate similar claims as well as an efficient deterrent against corporate wrongdoing.

*Gilbert v. First Alert, Inc.*, 904 F. Supp. 714, 719 (N.D. Ill. 1982). A class action is often the most fair and practicable means to address claims in securities cases. *Brosious v. Children Place Retail Stores*, 189 F.R.D. 138, 147 (D.N.J. 1999) ("[c]lass actions are often the most fair and practical vehicle for plaintiffs' claims in securities suits because 'those who have been injured are in a poor position to seek legal redress' . . . because individual claims might be small in monetary value, they might not be prosecuted on an individual basis due to the costs of litigation"). *See also Endo v. Albertine*, 147 F.R.D. 164 (ND. Ill. 1993) (certifying plaintiff class under § 11 of the 1933 Act).

II. The Proposed Class Meets the Prerequisites of Rule 23(a).

A suit may be maintained as a class action if it satisfies the four prerequisites of Rule 23(a) and, in addition, meets the conditions of one of the subsections of Rule 23(b). *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993); *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir.

4

1992), *cert. denied, Livaditis v. Rosario,* 506 U.S. 1051 (1993).

Rule 23(a) provides:

(a)     Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

In this case, Defendants do not challenge whether this action satisfies the numerosity and commonality requirements of Rule 23(a). Nevertheless, we will proceed to analyze each sub-part of Rule 23(a) to determine whether class certification is appropriate.

A.     <u>The Numerosity Requirement is Satisfied</u>.

In determining whether a class meets the numerosity requirement, a court can apply common sense to the facts available. *Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 184 (N.D. Ill. 1992). Although "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members," *Zeidman v. J. Ray McDermott & Co., Inc.,* 651 F.2d 1030, 1038 (5th Cir. 1981), there is no magic number needed to establish numerosity. *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 307 (N.D. Ill. 1995).

Here, the class contains thousands of persons or entities. Some 337,000,000 shares of First Chicago common stock were publicly traded on the New York Stock Exchange ("NYSE") and exchanged for Bank One common stock in the Merger. It is reasonable to conclude, and no one seriously contends otherwise, that these 337,000,000 shares were owned by thousands (probably tens of thousands) of persons throughout the United States. Courts in this district have granted class certification to groups smaller than 30. *See, e.g., Riordan v. Smith Barney,* 113 F.R.D. 60 (N.D. Ill.

1986); *Zeidman*, 651 F.2d at 1038 (class with as few as 25 or 30 members certified in securities action); *Manning v. Consumer Discount Co.*, 390 F. Supp. 320 (E.D. Pa. 1975), *aff'd*, 533 F.2d 102 (3d Cir. 1976), *cert. denied*, 429 U.S. 865 (class of 14 certified). Therefore, the class in this case clearly satisfies the numerosity requirement.

In addition, Rule 23(a)(1) provides that a class action may be maintained only if "joinder of all members is impracticable." To demonstrate that joinder is impracticable, the class representatives "only need to show that it is extremely difficult or inconvenient to join all members of the class." C.A. Wright, A. Miller & N. Kane, Federal Practice and Procedure, § 1762 at 159 (2d ed. 1986). In this case, it would be extremely difficult to join the thousands of members of the class. Therefore, we find that the requirements of Rule 23(a)(1) have been met because the class is so numerous that joinder of all members is impracticable.

B.  Common Questions of Law or Fact Are Present.

Fed. R. Civ. P. 23(a)(2) requires that there be a common question of law or fact among class members. The commonality requirement has been characterized as a "low hurdle, easily surmounted." *Scholes*, 143 F.R.D. at 185. Common questions exist when, despite the existence of individual issues among class members, there is a common nucleus of operative facts. *Rosario*, 963 F.2d at 1017-18; *Beale v. Edgemark Financial Corp.*, 164 F.R.D. 649, 654 (N.D. Ill. 1995). This element is satisfied when each class member's claim hinges on the same conduct by the defendants. *Beale*, 164 F.R.D. at 658.

The present case involves several common questions that relate to Defendants' conduct including, but not limited to:

(a) whether Defendants' actions alleged herein violate Sections 11, 12(2) & 15 of the

6

Securities Act of 1933, 15 U.S.C. §§ 77a, et seq.;

(b) whether Defendants' Registration Statement containing the Merger Proxy/Prospectus was accurate and complete; and

(c) whether the exchange ratio for First Chicago shares in the Merger was fair and proper.

Courts have repeatedly held that cases like this one, which proceed primarily under Section 11 of the 1933 Act, are particularly well-suited to class treatment and satisfy the commonality requirement of Rule 23(a)(2). *See, e.g., Brosious v. Children's Place Retail Stores*, 189 F.R.D. 138, 147 (D.N.J. 1999); *Zinberg*, 138 F. R.D. at 410. This is so because Section 11 claims require only a material misstatement or omission in a Registration Statement to prove liability. *Endo v. Albertine*, 1995 WL 170030 (N.D. Ill.) ("'Section 11 of the Securities Act . . . provides an express cause of action for damages to a person acquiring securities pursuant to a registration statement that misstates or omits a material fact'"). In Section 11 cases, typically the only individual issue is a calculation of the damages which each individual class member suffered.

For these reasons, we find that the commonality requirement of Rule 23(a)(2) has been met.

C.  Typicality Is Present.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) requires the Court to determine whether the representative plaintiff's claims have the same essential characteristics as the claims of the class at large. *De la Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). *See also Beale*, 164 F.R.D. at 654. A finding that commonality exists generally results in a finding that typicality also exists. *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 664 (N.D. Ill. 1996). The Rule does not require that each member of a class suffer exactly the same injury as the named class representative. *Tidwell v. Schweiker*, 677 F.2d 560, 586 (7th Cir. 1982),

7

*cert. denied*, 461 U.S. 905 (1983). Even when factual differences exist, similarity of legal theory satisfies the requirement. *De la Fuente*, 713 F.2d at 232-33.

This case satisfies the typicality requirement because Plaintiff alleges that Defendants committed the same unlawful acts affecting the entire class. *Rosario*, 963 F.2d at 1018; *Scholes*, 143 F.R.D. at 185-86. Indeed, Plaintiff and members of the class were provided with the same allegedly false Registration Statement and Merger Proxy/Prospectus and will use the same evidence to prove their case. The essential issue of the Plaintiff's case-- whether the Registration Statement contained material misstatements of fact or omissions — is typical of the class members' claims. No more is required to satisfy the typicality requirement. *See, e.g., Scholes*, 143 F.R.D. at 186; *Brosious*, 189 F.R.D. at 146; *Hoxworth v. Binder, Robinson & Co.*, 980 F.2d 912, 923 (3rd Cir. 1992) (plaintiffs' claim meets the typicality requirement if the claim "arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and . . . [are] based on the same legal theory").

For these reasons, we find that Plaintiff has met the typicality requirement of Rule 23(a)(3).

D.  Plaintiff Will Adequately Represent the Class.

To satisfy the adequacy of representation requirement, Plaintiff must show that: (1) the proposed representative does not have "antagonistic or conflicting claims with other members of the class;" (2) the proposed representative has "sufficient interest in the outcome of the case to ensure vigorous advocacy;" and (3) its counsel is "competent, qualified, experienced and able to vigorously conduct the litigation." *Sebo*, 188 F.R.D. at 316 (citation omitted). "Basic consideration[s] of fairness require that a court undertake a stringent and continuing examination of the adequacy of representation by the named class representative at all stages of the litigation where absent members

will be bound by the court's judgment." *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 89-90 (7th Cir. 1977). "[A] court must in the broadest sense be satisfied that the fiduciary duties and responsibilities of the class representative and class counsel will be conscientiously, fairly, and justly discharged in order to protect the interests of the class." *Ballan, 159* F.R.D. at 479.

Here, the adequacy requirement is satisfied. Plaintiff retained counsel who is very well qualified, experienced, and able to conduct the proposed litigation. Plaintiff's counsel has extensive experience in securities class action litigation and has successfully prosecuted class actions throughout the country. *See In re Glassine and Greaseproof Paper Antitrust Litig.,* 88 F.R.D. 302, 306 (E.D. Pa 1980) (when plaintiffs are represented by experienced, able counsel familiar with class litigation, "there is no ground for supposing that plaintiffs will not adequately represent the class"). In fact, Counsel in this case was selected as Lead Counsel because he has extensive experience and has obtained sizable recoveries on behalf of his clients. Thus, we find Counsel more than adequate.

Further, the Lead Plaintiff has no interests with respect to this litigation that conflict with, or are antagonistic to, the interests of absent class members. Plaintiff and all Class members allegedly were injured by the identical alleged wrongful conduct of Defendants and it is in Plaintiff's interest to vigorously prosecute this action on behalf of the Class.

Defendants argue that Naomi Borwell is not an adequate representative because she is not sufficiently familiar with the nature of this litigation and has failed to take an active role in the litigation. Defendants claim that Mrs. Borwell's failure to speak with Lead Counsel demonstrates her unwillingness or inability to limit the "unfettered discretion" of class counsel. Defendants portray Mrs. Borwell as knowing "virtually nothing about the progress or status of the litigation."

We find that this is not the case and that Mrs. Borwell is an adequate representative. Mrs.

Borwell is the Trustee of the Borwell Trust and makes investment decisions for that Trust. She also has served on the boards of several charities and she has been a director of several private banks. Thus, she brings financial experience to her role as class representative.

In connection with the Merger, the Borwell Trust had its 140,212 shares of First Chicago stock converted into 227,143 shares of Bank One stock. Mrs. Borwell testified that, as Trustee, she voted the Trust's First Chicago shares in favor of the Merger because both Bank One and its credit card operation had good reputations, and she thought the dividends would increase.

When Mrs. Borwell learned from a friend that a lawsuit had been filed against Bank One, she contacted her attorney, Michael Susman, concerning the Borwell Trust's investment in Bank One. Michael Susman is Mrs. Borwell's long-time friend and legal advisor. He introduced Mrs. Borwell to his brother, Arthur Susman, an attorney experienced in class action securities litigation. Both Michael and Arthur Susman agreed to represent Mrs. Borwell and the Borwell Trust in this litigation.

Defendants attempt to distort the relationship between Mrs. Borwell and Arthur Susman and mischaracterize her role as providing "nothing more than a name in the pleadings." According to Defendants, Mrs. Borwell never met or spoke with anyone at the firm of Lead Counsel, Susman & Watkins, until the day of her deopsition. Defendants take Mrs. Borwell's statement that she met with Arthur Susman and his firm for the first time on the day of her deposition as though this was her only contact with this litigation. However, that is not so.

Mrs. Borwell testified at her deposition that she spoke with Arthur Susman when his brother Michael Susman introduced them, she received materials from Susman & Watkins on several occasions regarding the existing litigation, and she provided Susman & Watkins with a signed certification to support the Borwell Trust's application to serve as Lead Plaintiff, and she also signed

10

a statement approving Arthur Susman as Lead Counsel. Not surprisingly, Mrs. Borwell primarily communicated with her long-time attorney and friend, Michael Susman, who as one of Plaintiff's counsel in this litigation, has kept her apprised of this litigation.

In addition, Mrs. Borwell directed the Trust Department at Private Bank to cooperate fully with her attorneys, Susman & Watkins, and to provide information and documents requested. Pursuant to Mrs. Borwell's instructions, an official of the Trust Department of Private Bank met with attorneys from Susman & Watkins regarding this litigation, provided copies of the Borwell Trust documents, and provided information on transactions within the Trust account.

Moreover, contrary to Defendants' characterization, Mrs. Borwell is not "in the dark" regarding this litigation. She has the requisite knowledge of the basis of this action necessary to be an adequate class representative. Indeed, even though Mrs. Borwell need only know the general basis of her claims, she has demonstrated that she is aware of numerous specific details of Defendant's alleged wrongdoings and testified that "[t]here were omissions and misstatements in the proxy and prospectus material, and that the credit card operation delayed posting their checks so that they created late fees for their customers, which, as a result, they lost a lot of customers, their profits went down, and the stock as a result took a tumble." She also testified that Defendants "were misstating or failing to state practices that they had in place" concerning their credit card operations which were unethical and perhaps not legal. She further testified that, had Defendants' practices been disclosed, "the bottom line would have been different." Indeed, when pressed as to what she meant by "the bottom line," Mrs. Borwell testified that "[i]f those practices had come to light, this [the merger] would never have been." Relying on her own banking experience, she testified that the Defendants "should not have been operating their business that way." This is hardly the testimony

11

of a witness characterized by the Defendants as "inexperienced," "completely in the dark," and who "did not carefully review" the facts of this case.

Further, when asked about her understanding of her obligations as a class representative, Mrs. Borwell testified that her obligations as a Lead Plaintiff in a securities class action were "[a]s a trustee, for the interest of all of the other claimants" which means that "their interests would be the same as mine, and that I would put their interests equal to mine or even beyond mine because I am trustee for their claim."

In sum, we find that Mrs. Borwell has demonstrated her commitment to this action by retaining experienced counsel, meeting with her attorneys, reviewing pleadings, producing documents, participating in her deposition, and agreeing to act as a fiduciary and do what is necessary to prosecute this action. For these reasons, we find that the Borwell Trust is an adequate class representative.

### III. The Proposed Class Satisfies the Requirements of Rule 23(b)(3).

The proposed Class also satisfies the requirements of Rule 23(b)(3) which provides:

> that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Each of the requirements is met in this case.

#### A. Common Questions Predominate.

While common questions of law or fact must predominate, they need not be exclusive. *Scholes v. Moore*, 150 F.R.D. 133, 138 (N.D. Ill. 1993). To determine whether common questions predominate, courts look to whether there is a "common nucleus of operative facts." *Ziemack*, 163

12

F.R.D. at 535 (citing *Rosario,* 963 F.2d at 1018). A court should direct its inquiry primarily toward the issue of liability, rather than damages, in determining whether common questions predominate. *Beale,* 164 F.R.D. at 658.

Defendants' alleged misstatements and omissions of material fact to members of the Class are at the core of the Complaint. The issues of law and fact that flow from Defendants' alleged misstatements and omissions predominate over any individual issue. Therefore, we find that common questions of law and fact predominate. *Id. See also Scholes,* 150 F.R.D. at 138 (finding predominance of common issues notwithstanding variance in material information); *Rosario* at 1018 ("[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement") (citing *Franklin v. City of Chicago,* 102 F.R.D. 944, 949-50 (N.D. Ill. 1984).

B. A Class Action is Superior.

A class action in this case is superior to other means of adjudication for several reasons. First, there is a common core of law and fact pertaining to Defendants' alleged misrepresentations and omissions in connection with the Merger of First Chicago and Bank One. Accordingly, class treatment is a more efficient means of adjudicating this matter than the myriad individual suits that potentially could be filed in the absence of class certification. *See Basile,* 105 F.R.D. at 508. *See also Research Corp. V. Pfister Associated Growers, Inc.,* 301 F. Supp. 497, 503 (N.D. Ill.. 1969). Indeed, any alternative to this class action could create duplication of actions, the very "evil that Rule 23 was designed to prevent." *Califano v. Yamasaki,* 442 U.S. 682, 690 (1979). Such "[s]eparate actions by each of the class members would be repetitive, wasteful and an extraordinary burden on the courts." *Kennedy v. Tallant,* 710 F.2d 711, 718 (11th Cir. 1983).

Second, Class members will benefit from class treatment because litigation costs are high and

13

it is, therefore, unlikely that shareholders will prosecute individual claims. *See Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1164-65 (7th Cir. 1974). A class action is a superior means to adjudicate claims of class members who would be overwhelmed by Defendants' enormous resources if they attempted to prosecute their individual claims. *Chandler,* 162 F.R.D. at 310; *Alexander,* 124 F.R.D. at 185.

Third, principles of judicial economy and efficiency favor trying this case in one action rather than forcing Class members to litigate identical claims individually. *Scholes,* 143 F.R.D. at 189 ("judicial economy and efficiency, as well as consistent judgments, are achieved by certifying the class"). Under these circumstances, class certification is the best way to manage this situation which could otherwise disintegrate into piecemeal adjudication of many individual actions involving essentially identical questions of law and fact.

Finally, this matter does not present significant management problems. Rule 23 was designed for this exact type of case. In this case, there is no realistic alternative to class action treatment. For all of these reasons, we find that the requirements of Rule 23 (a) and (b)(3) have been met. Therefore, this action is suitable to maintain as a class action.

IV. The Proposed Class Definition Is Too Broad

The final issue to be addressed is the definition of the Class. Plaintiff requests the certification of a class including *all* former First Chicago shareholders who exchanged their shares for Bank One stock. This proposed class, however, includes shareholders who suffered no injury from the Defendants' alleged wrongdoings. Based upon the statutory calculation of damages, former First Chicago shareholders who sold their stock prior to August 30, 1999, suffered no injury and should be excluded from the class.

14

Sections 11 and 12(a)(2) define the limits of a plaintiff's recovery for the alleged wrong. If the purchaser has sold his or her stock prior to the filing of the suit, section 11 provides that his or her damage "shall represent the difference between the amount paid for the security.., and the price at which such security shall have been disposed of in the market before suit." 15 U.S.C.§ 77k(e). Under section 12(a)(2), "a plaintiff who has sold his securities computes damages by taking the consideration paid for the security, reduced by the amount received for the security upon its sale and any income received." *Nielson v. Greenwood,* No. 91 C 6537, 1996 WL 563539, *8(N.D. Ill. Oct. 1, 1996).

On October 2, 1998, the date the merger became effective, Bank One stock closed at a price of $ 41.9375 per share. Bank One stock closed above that price every day thereafter until August 30, 1999, when it closed at $ 41.00 per share. If a proposed class member sold his or her stock prior to August 30, 1999, he or she necessarily would have sold the stock at a price above the consideration paid for the stock. Such class members earned a profit on their Bank One stock. A plaintiff who earns a profit from the stock does not have a securities fraud claim under sections 11 and 12 of the 1933 Act. *See PPM America, 853* F. Supp. at 876 (Plaintiffs who sold securities for a net profit "have suffered no damages cognizable under sections 11 or 12(2) of the 1933 Act"). Thus, all former First Chicago shareholders who sold their stock prior to August 30, 1999 are excluded from the proposed class.

## CONCLUSION

For the foregoing reasons, the Naomi Borwell Trust is hereby appointed as the representative of the class. We grant Plaintiff's motion for class certification with the modification that the class

shall exclude all shareholders who sold their stock prior to August 30, 1999. Therefore, we hereby certify the following class:

> All persons and entities who acquired their shares of BankOne Corporation common stock in exchange for their First Chicago NBD ("First Chicago") common stock pursuant to the Registration Statement and Merger Proxy/Prospectus, in connection with the Merger between Bank One Corporation and First Chicago on October 2, 1998. Excluded from the Class are: a) all persons who sold their stock prior to August 30, 1999; b) Defendants; c) any entity in which a Defendant has a controlling interest or is a part or subsidiary of, or is controlled by Bank One Corp.; and d) the officers, directors, affiliates, legal representatives, heirs, predecessors, successors and assigns of any of the Defendant.

It is so ordered. This case is set for status on May 23, 2002 at 10:00 a.m.

/s/ Wayne R. Andersen
Wayne R. Andersen
United States District Judge

Dated: May 9, 2002