# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| **CASE NUMBER** | 00 C 767 | **DATE** | 7/31/2002 |
| **CASE TITLE** | In Re: In Re: Bank One Securities Litigation | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]



**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order.  This Court grants in part and denies in part Plaintiffs' motion to compel the production of documents [137-1].  Plaintiffs' L Reynolds & Assc PC, et al. for leave to depose Donna Barrett [153-1] is denied.  Plaintiffs' L Reynolds & Assc. PC, et al. motion to strike the declaration of Donna Barrett [153-2] is granted.

(11) ■ [For further detail see

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | AUG 02 2002 |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | 7/31/2002 |
| ✓ | Copy to judge/magistrate judge. | date mailed notice |

| DK | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 AUG -1 AM 9: 22 Date/time received in central Clerk's Office | DK mailing deputy initials | **Document Number** 164 |



## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE BANK ONE SECURITIES | ) | **Case No. 00 C 767** |
| LITIGATION, FIRST CHICAGO | ) | |
| SHAREHOLDER CLAIMS | ) | **Magistrate Judge Morton Denlow** |

## MEMORANDUM OPINION AND ORDER

This case presents the issue of whether the work-product privilege protects documents

created by Bank One in response to an investigation by the Office of the Comptroller of the

Currency ("OCC"). Additionally this Court examines whether documents created by the

OCC are protected by the bank examination privilege. Oral argument was held on June 25,

2002. For the reasons stated herein, Plaintiffs' motion to compel is granted in part and

denied in part.

## I. BACKGROUND FACTS

This case arises from the October 2, 1998 merger (the "Merger") between Bank One

and First Chicago NBD ("FCN"). Plaintiffs allege that Bank One violated federal securities

laws by issuing a material false and misleading Joint Proxy Statement and Prospectus in

connection with the Merger. Specifically, Plaintiffs assert First USA Bank, N.A. ("FUSA"),

a credit card subsidiary of Bank One, adopted an "earnings at any cost" accounting practice

which charged customers exorbitant interest, penalties, and late fees in an attempt to create

a facade of enhanced earnings and growth. Plaintiffs contend Bank One was cognizant that

these aggressive accounting practices would create substantial risks for future operations.

Plaintiffs further allege Bank One failed to disclose the use of non-traditional accounting methods as well as the material risk of customer attrition. Plaintiffs contend that the culmination of Bank One's actions of concealing material risks and failing to comply with generally accepted accounting principles led to the creation of false and misleading financial statements in 1997 and the first half of 1998 in which revenues, income, and earnings were all overstated.

Plaintiffs assert the misleading financial statements, containing various omissions and misstatements, translated into an artificially inflated stock price at the time of the Merger which ultimately damaged FCN shareholders. Bank One issued an array of press releases post-Merger indicating earnings would be lower than expected and eventually concluded that earnings for 1999 were expected to be 18% lower than predicted. The stock price for Bank One declined substantially after the low earnings expectations were made public. Additionally, the CEO of Bank One indicated the decline in profits could largely be attributed to practices adopted by FUSA such as the implementation of high late fee charges for credit card customers.

On February 23, 2001 Plaintiffs served Bank One with a request for the production of documents, including "non-public" materials created by the OCC. Bank One objected to the production of any OCC or other governmental document pursuant to 12 C.F.R §4.12 as well as the bank examination privilege and informed Plaintiffs to seek the information directly from the OCC. Bank One did however produce a number of redacted documents.

On July 3, 2001 Plaintiffs subpoenaed Arthur Anderson LLP ("AA"), Bank One's auditor, for any submissions made to the OCC with respect to Bank One's credit card practices and received similar objections to production

Plaintiffs, dissatisfied with production, filed a motion to compel regarding numerous topics including OCC related documents. This Court denied the Plaintiff's motion without prejudice on November 19, 2001, pending completion of the OCC's administrative process to review requested documents. This Court also ordered the creation of a privilege log for all documents withheld on any basis other than an OCC objection. Bank One as well as its auditor, AA, have produced thousands of pages of additional documentation to Plaintiffs consistent with the Court's order. Bank One asserted that any documents not produced are protected by the bank examination privilege and the work-product privilege.

Prior to this Court's order on November 19, 2001, the Plaintiffs served the OCC with a request for non-public information regarding FUSA for the period January 1997 to the present. The OCC denied the request claiming Plaintiffs did not adequately demonstrate the relevancy of requested information and failed to indicate such information was not available elsewhere. Furthermore, the OCC stated the Plaintiffs' time period for requested documents was too broad and should be amended to July 1, 1998 through October 2, 1998 as July 1st represents the date that FUSA became a national bank and October 2nd is the date of the Merger. Regardless of an amendment to the time period, the OCC stated the information sought was both confidential and privileged based upon its own regulations and therefore did

not produce any requested documents.

Plaintiffs proceeded to subpoena the OCC on January 18, 2001 for 42 categories of documents. The OCC responded on February 1, 2001 asserting the information sought was privileged under its own regulations as well as the bank examination privilege. Plaintiffs sent an additional letter to the OCC on March 1, 2001 attempting to limit the requested information in quantity and scope and offered further proof of relevancy. Plaintiffs also suggested the OCC advise Bank One or FUSA to produce requested documents, therefore reducing the burden on the OCC. Again, the OCC rejected this request. However the OCC offered to produce more than 11,000 customer complaints to Plaintiffs as an alterative source of information.

Dissatisfied with this response, Plaintiffs filed this second motion to compel discovery against Bank One and non-parties, the OCC and AA, on May 1, 2002. Plaintiffs request the production of documents relating to the following matters:

1. Business records, reports and similar materials which discuss the credit card operations (and or accounting for the same) of Bank One and/or its subsidiary FUSA, during the time period relevant to this lawsuit, which Bank One and/or FUSA provided the OCC (or other Government agencies) in connection with any government supervision or regulation of FUSA's and/or Bank One's credit card operations;

2. Reports of Examination, supervisory correspondence, supervisory orders or agreements, business plans, and/or other similar materials prepared by either Defendants, AA, or the OCC which relate to, or comment on, the credit card operations of Bank One and/or FUSA, including documents related to credit card customer service, billing, marketing, repricing, and/or accounting issues;

3. Documents related to the compliance of the credit card operations of FUSA and/or

4

Bank One with OCC Bulletin 98-3, "Technology and Risk Management"; and

4.      Factual Testimony-related documents concerning FUSA and/or Bank One credit card operations.

A protective order governing this litigation was entered on October 11, 2001 and the OCC, AA, and Bank One have since provided the Court with privilege logs as well as *in-camera* examples of the documents withheld. Following the submission of briefs by Plaintiffs, Bank One, AA and the OCC, the Plaintiffs and the OCC entered an agreed order by which the OCC waived the bank examination privilege for any documents created by AA or Bank One. Given the agreed order, the only documents within the respective privilege logs of AA and Bank One for which the bank examination privilege applies are those documents created by the OCC. Bank One has recognized this limitation and continues to assert the protection of the work-product doctrine for the remainder of documents in its privilege log.

## II. MOTION TO COMPEL ANALYSIS

This motion presents the following issues: 1) whether Bank One waived its work-product privilege by providing certain documents to the OCC; 2) whether documents not shown to the OCC were prepared in anticipation of litigation; and 3) whether documents created by the OCC are protected by the bank examination privilege and therefore not discoverable.[1] This Court will describe the work-product privilege and then address the three issues presented by the motion to compel.

_____

[1] The side issue of the motion to strike the declaration of Donna Barrett is granted.

## A.     Work-Product Privilege

### 1.     Policies Underlying the Work-Product Doctrine

The work-product doctrine, announced in *Hickman v. Taylor*, 329 U.S. 495 (1947),

protects otherwise discoverable documents and tangibles, and was subsequently codified as

Rule 26(b)(3) of the Federal Rules of Civil Procedure. *Caremark, Inc. v. Affiliated Computer*

*Services, Inc.*, 195 F.R.D. 610, 612 (N.D. Ill. 2000).  Rule 26(b)(3) provides:

> [A] party may obtain discovery of documents and tangible things otherwise
> discoverable under subdivision (b)(1) of the rule and prepared in anticipation
> of litigation or for trial by or for another party or by or for that other party's
> representative (including the other party's attorney, consultant, surety,
> indemnitor, insurer, or agent) only upon a showing that the party seeking
> discovery has substantial need of the materials in the preparation of the party's
> case and that the party is unable without undue hardship to obtain the
> substantial equivalent of the materials by other means.  In ordering discovery
> of such materials when the required showing has been made, the court shall
> protect against disclosure of the mental impressions, conclusions, opinions or
> legal theories of an attorney or other representative of a party concerning the
> litigation.

Factual information may not be withheld under the work-product doctrine, but must be

produced through interrogatories, depositions or other discovery. *Allen v. Chicago Transit*

*Authority*, 198 F.R.D. 495, 500 (N.D.Ill. 2001).

The work-product doctrine exists because "it is essential that a lawyer work with a

certain degree of privacy, free from unnecessary intrusion by opposing parties and their

counsel." *Hickman*, 329 U.S. at 510. *See also, Upjohn v. United States*, 449 U.S. 383, 400

(1981) (commenting on the danger of disclosing an attorney's mental processes).  As

announced in *Hickman*, if work-product was discoverable upon mere demand, "much of what

is now put down in writing would remain unwritten." 329 U.S. at 511. Further, disclosure of an attorney's efforts during pretrial discovery "could disrupt the orderly development and presentation of his case." *United States v. Nobles*, 422 U.S. 225, 239 (1975). A trial attorney should be able to "prepare his legal theories and plan his strategy without undue and needless interference." *Hickman*, 329 U.S. at 511. If such work-product was discoverable upon mere demand, "inefficiency, unfairness, and sharp practices would inevitably develop," thereby having a "demoralizing" effect on the legal profession. *Id*. Therefore, opinion work product as noted by the Supreme Court in *Upjohn*, deserves "special protection." 449 U.S. at 400.

In the instant case, Bank One asserts the work-product privilege for all documents requested by Plaintiffs. Plaintiffs argue the requested documents are not protected under the work-product doctrine because Bank One waived the work-product privilege and the documents were not produced in anticipation of litigation.

### 2. Bank One Waived the Work-Product Protection For All Documents Provided to the OCC

Plaintiffs claim Bank One waived the work-product doctrine because disclosure of documents to the OCC was inconsistent with the maintenance of secrecy from a disclosing party's adversary. The work-product doctrine promotes the adversarial system by protecting documents created by attorneys in anticipation of litigation. *Westinghouse Electric Corp. v. The Republic of the Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991). A determination of whether documents have been made available to an adversary is therefore essential to assess whether the privilege has been waived. "[T]he purpose of the work-product doctrine

requires us to distinguish between disclosures to adversaries and disclosures to non-adversaries." *Id.*

The voluntary disclosure of attorney work-product to an adversary waives work-product protection. *Cases collected at Edna Selan Epstein*, The Attorney-Client Privilege and the Work-Product Doctrine 610-12 (American Bar Association 4th ed. 2001). "Because the protection is designed to protect an attorney's trial preparation and mental processes from discovery at the behest of an adversary, clearly voluntary disclosure to an adversary would almost invariably be seen as a total waiver." *Id.* at 613. For example, the Supreme Court held a party waived work-product protection by presenting an investigator as a trial witness in *United States v. Nobles*, 422 U.S. at 239-40. The protected materials were waived with respect to matters covered in his testimony. *Id.* "What constitutes a waiver with respect to work-product materials depends, of course, upon the circumstances." *Id.* at 240, n.14.

In *Salomon Brothers Treasury Litigation v. Steinhardt Partners, L.P.*, 9 F.3d 230 (2nd Cir. 1993), the court found the work-product doctrine had been waived with respect to a document which defendant had voluntarily produced to the Securities and Exchange Commission ("SEC") in the hope of preventing a formal enforcement proceeding. The document was sought by Plaintiffs who had filed a civil class action relating to the subject matter of the SEC investigation. The Second Circuit agreed with the district court's conclusion that voluntary disclosure of the document to an adversary waived the protection in a subsequent civil suit, explaining, "once a party allows an adversary to share the

otherwise privileged thought processes of counsel, the need for the privilege disappears." *Id.* at 235.

Unlike the instant case where Bank One complied with an OCC investigation in which documents were ordered to be produced, in both *Salomon* and *Nobles,* information was voluntarily disclosed to adversaries. However, the voluntary nature of the disclosure is not dispositive as to whether the work-product privilege has been waived. For example, in *Westinghouse* the Third Circuit held that documents provided by the defendant, in compliance with SEC and Department of Justice ("DOJ") investigations, constituted a waiver of the work-product privilege due to the disclosure of information to adversaries. 951 F.2d at 1428. While the defendant's disclosure was not voluntary *per se*, but rather in response to a governmental request, the court highlighted that the deterioration of the adversarial relationship between the defendant and the agencies was a dispositive factor for the waiver of the work-product privilege as opposed to the voluntary nature of the exchange. *Id.*

The Sixth Circuit reaffirmed this logic with its decision in *In Re Columbia/HCA Healthcare Corporate Billing Practices*, 293 F.3d 289 (6th Cir. 2002), in which the court determined the work-product privilege was waived when documents were produced by the defendant for a governmental adversary, the DOJ, in response to an investigation. Both of these cases indicate a waiver of the work-product doctrine is justified in instances in which the adversarial nature of the litigation process is compromised due to the disclosure of information. Moreover, both of these cases infer the heart of the waiver issue is the

provision of information to an adversary as opposed to the voluntary nature of such disclosure.

Like *Westinghouse* and *Columbia/HCA Healthcare*, the instant litigation entails the non-voluntary disclosure of information to a governmental agency in response to an investigation. The OCC targeted Bank One for an investigation due to questionable practices adopted by Bank One. Given these circumstances, the nature of the relationship between Bank One and the OCC would accurately be characterized as adversarial. *Westinghouse*, 951 F.2d at 1428. Furthermore, in *Westinghouse* the Plaintiff entered into explicit confidentiality agreements with both the SEC and the DOJ during the course of their respective investigations. *Id.* Nonetheless, the Third Circuit rejected Plaintiff's "argument that it did not waive the work-product protection because it reasonably expected the agencies to keep documents disclosed to them confidential." *Id.* at 1430. The court focused upon the adversarial nature of the relationship between the Plaintiff and the government agencies and stated that a different conclusion may have been reached had the parties not been adversaries. *Id.* However, "because Westinghouse deliberately disclosed work-product to two government agencies investigating allegations against it", it could not rely on the confidentiality agreement to invoke the protection of the work-product doctrine. *Id.* at 1431.

Similarly, in *Columbia/HCA Healthcare*, the Plaintiff entered into a confidentiality agreement with the DOJ in order to produce certain documents. Nonetheless, the court followed the logic of the Third Circuit and ruled that the adversarial nature of the relationship

between the DOJ and the plaintiff made the confidentiality agreement moot. *Columbia/HCA*

*Healthcare*, 293 F.3d at 306. Like in *Westinghouse* and *Columbia/HCA Healthcare*, the

confidentiality agreement between the OCC and Bank One does not salvage the protection

of the work-product doctrine due to the adversarial nature of this relationship. Therefore, to

the extent Bank One provided its adversary, the OCC, with documents, Bank One waived the

work-product privilege and unless protected by the bank examination privilege, *infra* at 14,

such documents must be produced.

Bank One, however, did not produce all documents to the OCC. Bank One's

privilege log reveals that only documents numbered 2, 6, 7, and 8 were produced to the OCC.

Therefore, all remaining documents, not revealed to the OCC, must be further analyzed

within the framework of the work-product doctrine to determine whether the privilege

applies. In order to fall within the protection of the work-product privilege, Bank One must

establish these documents were prepared in anticipation of litigation.

### 3. Documents Not Provided to the OCC Were Not Prepared in Anticipation of Litigation and are Not Protected by the Work-Product Privilege

The test to determine whether materials were prepared in anticipation of litigation is

"whether, in light of the nature of the document and the factual situation in the particular

case, the document can fairly be said to have been prepared or obtained because of the

prospect of litigation." *Binks Manufacturing Co. v. National Presto Industries, Inc.*, 709

F.2d 1109, 1119 (7th Cir. 1983). To qualify as work-product, the material must come into

existence because of the prospect of litigation or some articulable claim is likely to lead to

11

litigation. *Id.* at 1120. The work-product doctrine extends beyond the attorney to documents prepared by a party's representative or agent. *Trustmark Insurance Co. v. General & Cologne Life Re of America*, 2000 WL 1898518 at *3 n.9 (N.D.Ill. 2000). However, "the work product rule does not come into play merely because there is a remote prospect of future litigation....'there is no work product immunity for documents prepared in the regular course of business rather than for the purpose of litigation.'" *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977). Furthermore, "the mere fact that litigation does eventually ensue does not, by itself, cloak materials prepared by an attorney with the protection of the work product privilege; the privilege is not that broad." *Binks*, 709 F.2d at 1118.

In the instant case, Bank One asserts that all documents sought to be discovered were produced in anticipation of litigation. Bank One highlights the plethora of pending law suits as well as on-going law suits as evidence. However, *Binks* clearly establishes that the mere presence of law suits is not substantial enough to meet the burden of proving documents were produced in anticipation of litigation. *Id.* The work-product privilege is not intended to be used as a broad shield to hide documents but rather a protection mechanism, enabling attorneys to effectively service their clients. *Id.*

Bank One is attempting to assert the work-product privilege for documents produced in the regular course of business as well as documents produced in response to an OCC investigation. Neither of these purposes has a direct relation to the prospect of litigation. For

example, documents numbered 3, 5, 9, 11, 13, 14, 15, 16, and 17 in Bank One's privilege log all relate to the bank's response to an OCC investigation. Generally, all of these documents represent a form of internal communications within the bank as a response to the implications of the OCC investigation. In order for the bank to continue operating, it was required to comply with OCC recommendations and make internal changes. The bank consulted with various entities, internally and externally, in an effort to make necessary business changes. The corresponding documents detail the necessary changes and illustrate the effectiveness of such changes upon day to day business activities. Materials or investigative reports developed in the ordinary course of business do not rise to the status of work product. In order to qualify as work product, the material or report must come into existence because of the litigation or some articulable claim has arisen that is likely to lead to litigation. *Id.* at 1118 (quoting *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 604 (8th Cir. 1977). Essentially, documents that are created in the ordinary course of business or that would have been created irrespective of litigation are not under the protection of the work product doctrine. *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998).

The documents in question were not prepared due to the anticipation of litigation, but rather arise from the evolution of business activities at Bank One as a result of an OCC inquiry. Bank One's pending litigations were tangential at best to the document production as opposed to the main purpose behind the creation of such documents. This tenuous

relationship does not invoke the protection of the work-product doctrine.[2]

## B.   Bank Examination Privilege

### 1.   The Court Recognizes a Bank Examination Privilege.

Neither the Seventh Circuit nor the Supreme Court has explicitly recognized the Bank

Examination privilege.  Nonetheless, the Seventh Circuit recognized the deliberative process

privilege to protect documents created and retained by the Federal Trade Commission from

disclosure in *United States v. Farley*, 11 F.3d 1385 (7th Cir. 1993).  The Seventh Circuit

opined "The deliberative process extends to the pre-decisional communications – if

communications such as these were exposed the candor of government staff would be

tempered 'with a concern for appearances to the detriment of the decionmaking process.'"

*Id.* at 1389.  The bank examination privilege provides an analogous protection for the

banking industry by promoting and protecting the integrity of candid relations between banks

and government regulatory agencies.  Therefore it can be inferred that this novel privilege

falls within the realm of a deliberative process protection recognized in *Farley*.

Traditionally government deliberations have been protected by a variety of qualified

privileges in order to promote efficient and effective decision-making which is fueled by the

free-flow of information.  *Principle v. Crossland Savings, FSB*, 149 F.R.D. 444, 447

(E.D.N.Y. 1993).  "The deliberative process privilege protects communications that are part

of the decision-making process of a government agency.  Since frank discussion of legal and

---

[2]Bank One's privilege log asserts the attorney-client privilege for documents numbered 5
and 12.  With respect to document 12, the document is to be produced with any hand-written
notes from the attorney redacted.  Document number 5 is to be produced in whole.

policy matters is essential to the decision making process of a government agency, communications made prior to and as part of an agency determination are protected from disclosure." *United States v. Farley*, 11 F.3d at 1389, *citing NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52 (1975). The bank examination privilege falls under this broad category of government protections and "is designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications." *In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995).

Practicality necessitates the bank examination privilege in order to preserve a safe banking environment. *In re Subpoena Upon the Comptroller of the Currency, and the Secretary of the Bd. Of Governors of the Federal Reserve Sys*, (In Re Subpoena), 967 F.2d 630, 633 (D.C. Cir. 1992). The court in *In Re Subpoena* opined,

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency...Because bank supervision is relatively informal and more or less continuous, so too must be the flow of communication between the bank and the regulatory agency. Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and it's regulators were not privileged.

*Id.* at 634. The bank examination privilege only protects agency opinions and recommendations and can therefore only be asserted by a regulatory agency. Any materials pertaining to purely factual matters fall outside the scope of the privilege and if proven to be relevant, must be produced. *In re Bankers Trust*, 61 F.3d at 471. Additionally, the regulatory

agency asserting the privilege has the burden of proving the requested documents are protected. *Schreiber v. Society for Savings Bancorp., Inc.*, 11 F.3d 217, 220 (D.C. Cir. 1993). The subpoenaed documents must be produced when the agency fails to establish such privilege. *Id.*

The bank examination privilege, however, is not an absolute privilege but rather a qualified privilege. "[T]he privilege may be overridden where necessary to promote 'the paramount interest of the Government in having justice done between litigants.'" *In Re Subpoena*, 967 F.2d at 634. The party seeking to override the asserted privilege and gain access to deliberative materials is required to demonstrate good cause. *In Re Bankers Trust*, 61 F.3d at 471. The court then has the duty of balancing "the 'competing interests' of the party seeking the document and those of the government." *Id.* at 472. Traditionally, courts have considered the following five factors to assess the competing interests of the privilege versus that of disclosure: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable. *Principle*, 149 F.R.D. at 447.

In the instant litigation, the bank examination privilege has been asserted by Bank One in addition to the OCC and AA. All three parties submitted privilege logs as well as documents for *in camera* review. As previously noted, the OCC has waived the bank

examination privilege as it applies to documents created by AA or Bank One. Therefore the only documents that fall under the purview of the bank examination privilege in the instant case are documents created by the OCC. With respect to this category of documents, the OCC made its own determination, independent of a previous court order, to curtail the relevant time period for discovery to July 1, 1998 through October 2, 1998. However, the court reaffirms its original belief that relevant documents are likely to arise after the date of the Merger, October 2, 1998. Therefore the OCC's decision to limit its discovery time-line was erroneous and the OCC must comply with the court's proscribed time period of January 1, 1997 through October 2, 1998, as it relates to discovery in the instant case. Nonetheless, the Court will analyze the original documents which the OCC seeks to protect through its own internal regulations as well as the bank examination privilege.

## 2. Bank Examination Reports and Memorandum Created by the OCC are Privileged

Upon an *in camera* review by this Court of the OCC documents, the documents in question predominantly contain opinions and or recommendations as opposed to facts. While there is some presence of factual material within these documents, the factual and deliberative components are demonstrably intertwined and therefore "the court must determine whether the privilege, which is qualified, should be overridden for good cause and the documents produced." *Schreiber*, 11 F.3d at 220. In order to make this determination, the aforementioned five-prong balancing test will be applied to evaluate: "(1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the

seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are voidable." *Principle*, 149 F.R.D. at 447. The results of this test determine whether the government's interest in non-disclosure outweigh the Plaintiffs' interest in obtaining non-public information.

With respect to relevancy, the requested OCC documents address potential regulatory infractions by Bank One and are therefore deemed to be relevant to this litigation fulfilling the first prong of the balancing test. As to the availability of other evidence, it appears much of the requested materials consist of expert opinions based upon factual data. Plaintiffs have been provided with the raw factual materials underlying these opinions and can use their own expertise to render opinions on these facts. Therefore, Plaintiffs have been afforded adequate forms of alternative information and fail to meet the second prong of this test. The third prong of the test asks the Court to evaluate the seriousness of the litigation at hand. Transparency in accounting and the issuance of sound financial statements represent but two of the critical issues in the instant case. Given the current climate of the economy and the heightened need to promote sound, reliable financial data in order to permit the public to make educated investing decisions, there is no question that the issues presented in the instant litigation are of a serious nature fulfilling the third prong of the balancing test. Part four of the balancing test analyzes the government's role in the litigation. The OCC is not a party to the instant litigation and does not have a direct interest in the outcome of this litigation.

Moreover, the OCC has fulfilled its duty as a bank regulator with respect to the practices of Bank One and continues to serve in a regulatory capacity outside this case. The fourth prong of this test is therefore not met as the government's interest in this case is minimal. Finally, the possibility of future timidity by government employees forced to reveal confidential opinions is a concern. The memos and examinations created by the OCC contain the thoughts and recommendations of the government. Should the government be forced to produce these documents, it is probable that future government employees may be reluctant to capture the full breadth of their opinions and thoughts in written format for fear of future disclosure. A break in confidentiality could have a "chilling effect" on the ability of bank regulators to perform their duties in the future. Therefore the final prong of this balancing test is not met and the government's interest in protecting its documents outweighs the public's interests in disclosure. In balancing the five factors, the Court concludes the bank examination privilege should not be overridden and the OCC examination reports are not to be produced.

## III. CONCLUSION

For the foregoing reasons, **this Court grants in part and denies in part Plaintiffs'**

**motion to compel the production of documents requested in its document request.** All

documents ordered to be produced shall be in accordance with the protective order entered

in this case.

**SO ORDERED THIS 31ST DAY OF JULY, 2002.**

**MORTON DENLOW**
**United States Magistrate Judge**

**Copies mailed to the following:**

Elwood S. Simon
John Zuccarini
ELWOOD S. SIMON & ASSOCIATES, P.C.
355 South Old Woodward Avenue, Suite 250
Birmingham, MI 48009

Arthus T. Susman
Charles R. Watkins
John R. Wylie
Matthew T. Heffner
SUSMAN & WATKINS
Two First National Plaza
20 South Clark Street, Suite 600
Chicago, IL 60603
**Attorneys for the Plaintiffs**

Patrick J. Fitzgerald
Maria Simon
UNITED STATES ATTORNEYS
219 South Dearborn Street, 5th Floor
Chicago, IL 60604

L. Robert Griffin
Earnest C. Barrett, III
Office of the Comptroller of the Currency
250 E Street, S.W.
Washington, D.C. 20219
**Attorneys for the Non-party Office of the
Comptroller of the Currency**

Alan N. Salpeter
Jason B. Fliegel
MAYER, BROWN, ROWE & MAW
190 South LaSalle Street
Chicago, IL 60603
**Attorneys for the Non-party Arthur Anderson LLP**

William F. Conlon
Walter C. Carlson
James W. Ducayet
Rachel M. Blum
SIDLEY & AUSTIN
Bank One Plaza
10 S. Dearborn Street
Chicago, IL 60603

Robert Y. Sperling
Ronald S. Betman
KATTEN MUCHIN ZAVIS
525 W. Monroe Street - Suite 1600
Chicago, IL 60661

Julie Lepri
BANK ONE CORPORATION
Bank One Plaza
10 S. Dearborn Street – 11th Floor
Chicago, IL 60603
**Attorneys for Defendant Bank
One Corporation**

Theodore R. Tetzlaff
Brent D. Stratton
McGUIRE WOODS, LLP
77 West Wacker Drive
Suite 4400
Chicago, IL 60601
**Attorneys for Defendant John B.
McCoy**